UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| GEORGE E. SULLS, JR., | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:17-cv-217 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner for Operations, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, George E. Sulls, Jr., on May 10, 2017. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, George E. Sulls, Jr., filed applications for Disability Insurance Benefits and Supplemental Security Income on July 29, 2013, alleging a disability onset date of August 20, 2010. (Tr. 52). Sulls amended his alleged disability onset date to June 1, 2013. (Tr. 52). The Disability Determination Bureau denied Sulls's applications on October 1, 2013, and again upon reconsideration on December 5, 2013. (Tr. 52). Sulls subsequently filed a timely request for a hearing on January 3, 2014. (Tr. 52). A hearing was held on July 2, 2015, before Administrative Law Judge (ALJ) Brian Saame, and the ALJ issued an unfavorable decision on August 13, 2015. (Tr. 52-67). Vocational Expert (VE) Ronald Malik and Sulls's wife, Alicia Sulls, testified at the hearing. (Tr. 52). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4).

Sulls met the insured status requirements of the Social Security Act through December 31, 2014. (Tr. 54). On August 13, 2015, the ALJ issued an unfavorable decision and made findings as to each of the steps in the five-step sequential analysis. (Tr. 52-67). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Sulls had not engaged in substantial gainful activity since June 1, 2013, the amended alleged onset date. (Tr. 54).

At step two, the ALJ determined that Sulls had the following severe impairments: diabetes mellitus with diabetic neuropathy, degenerative disc disease of the cervical and lumbar spine, pancreatitis, hypothyroidism, obesity, left ear hearing loss, knee pain, low average to borderline intellectual functioning, and adjustment disorder with anxiety and depression. (Tr. 55).

At step three, the ALJ concluded that Sulls did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 55). The ALJ considered Sulls's physical impairments against the following criteria: Listing 1.02, major dysfunction of a joint; Listing 1.04 disorders of the spine; and Listing 2.10, hearing loss not treated with cochlear implant. (Tr. 55). Moreover, the ALJ evaluated Sulls's diabetes mellitus against the criteria in Listing 11.14, peripheral neuropathies, as well as his hyperthyroidism under Listing 9.00B.2. (Tr. 56). Pursuant to SSR 02-1p, the ALJ considered Sulls's obesity in determining whether his medically determinable impairments met or medically equaled any listing and in determining the residual function capacity. (Tr. 56). After a review of the medical record, the ALJ found that Sulls did not have a physical disability to the degree contemplated by the listings and that no medical

expert opined that his physical impairments, either singly or in combination, medically equaled a listing. (Tr. 56).

The ALJ considered Sulls's level of intellectual functioning by considering Listing 12.05. (Tr. 56). The ALJ noted that before reaching the severity sections of Listing 12.05, it was necessary for Sulls to establish that he had a significantly sub-average intellectual functioning with deficits in adaptive functioning that initially manifested in the developmental period, which was before the age of 22. (Tr. 56). The ALJ determined that there was no evidence of significant deficits in adaptive functioning prior to age 22. (Tr. 56). The ALJ noted that Sulls had received his high school diploma, passed his driver's license test, and had worked at the age 16. (Tr. 56). However, his employment was not at substantially gainful levels. (Tr. 56). Therefore, Sulls did not establish significant sub-average intellectual functioning or adaptive deficits prior to age 22. (Tr. 56). Also, the ALJ considered the severity of Sulls's adjustment disorder against Listing 12.04, affective disorder, and Listing 12.06, anxiety-related disorders. (Tr. 56). Accordingly, the ALJ determined that the severity of Sulls's mental impairments did not meet or medically equal the listings. (Tr. 57).

In finding that Sulls did not meet the above listings, the ALJ considered the paragraph B criteria for mental impairments, which required at least two of the following:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(Tr. 57). The ALJ defined a marked limitation as more than moderate but less than extreme and repeated episodes of decompensation, each of extended duration, as three episodes within one year or once every four months with each episode lasting at least two weeks. (Tr. 57).

The ALJ determined that Sulls had mild restrictions in activities of daily living, mild difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace. (Tr. 57). The ALJ found that Sulls had no episodes of decompensation which were of extended duration. (Tr. 57). Because Sulls did not have two marked limitations or one marked limitation and repeated episodes of decompensation, the ALJ determined that he did not satisfy the paragraph B criteria. (Tr. 57). Additionally, the ALJ found that Sulls did not satisfy the paragraph C criteria. (Tr. 57).

After consideration of the entire record, the ALJ then assessed Sulls's residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps, stairs, ladders, ropes, or scaffolds. He is limited to occasional overhead reaching and lifting, but can do frequent handling and fingering with the left upper extremity. He requires the option to change positions for 10 minutes once per hour, provided he is not off task more than 5 percent of the time. He is limited to occasional exposure to extreme temperatures, noise, vibration, and workplace hazards such as moving machinery and unprotected heights. Due to moderate limitations in concentration, persistence, or pace, the claimant is limited to simple, routine tasks. He is limited to jobs that require no more than occasional verbal communication. He requires a cane to walk.

(Tr. 58). The ALJ explained that in considering Sulls's symptoms he followed a two-step process. (Tr. 58). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Sulls's pain or other symptoms. (Tr. 58). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Sulls's functioning. (Tr. 58).

4

The ALJ acknowledged that Sulls's primary argument was that his impairments limited him to sedentary work, and that considering his vocational profile it would result in a finding of disability. (Tr. 58). The ALJ determined that after review of the evidence Sulls's medically determinable impairments reasonably could have been expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Tr. 62).

At step four, the ALJ found that Sulls was unable to perform his past relevant work. (Tr. 65). Considering Sulls's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that he could perform, including assembly press operator (1,300 in Indiana and 32,500 jobs nationally), solderer (4,600 jobs in Indiana and 128,000 jobs nationally), and electronics assembler (400 jobs in Indiana and 9,200 jobs). (Tr. 67). The ALJ found that Sulls had not been under a disability, as defined in the Social Security Act, from August 20, 2010 through the date of this decision, August 13, 2015. (Tr. 67).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28

L. Ed. 2d 852 (1972) (quoting **Consol. Edison Co. v. NLRB**, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see* **Bates**, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. **Roddy v. Astrue**, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." **Lopez ex rel Lopez v. Barnhart**, 336 F.3d 535, 539 (7th Cir. 2003).

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If he is, the claimant is not disabled, and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see* **Williams v. Colvin**, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling.

However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**.

Sulls has requested that the court reverse the ALJ's decision and remand this matter for additional proceedings. In his appeal, Sulls has argued that: (1) the ALJ failed to consider or evaluate the opinion of his treating physician, Dr. Richardson; (2) the ALJ failed to present and account for all limitations in Sulls's mental functioning in his hypothetical question to the VE and the RFC; (3) the ALJ's assessment of Sulls's physical RFC was inadequate and contrary to SSR 96-8p; (4) the ALJ failed to apply SSR 83-12 and determine whether there was a significant reduction in the range of light work requiring a finding of disability under the Grid rules; and (5) the ALJ failed to address contrary evidence regarding Sulls's literacy.

Sulls's first visit with treating physician, Dr. Lisa Richardson, was on August 27, 2013. At the initial examination, Dr. Richardson completed the Medicaid disability form. (Tr. 682-89). She found that Sulls's back pain made it difficult for him to work at a job which required him to lift and carry things. (Tr. 688). Also, Sulls had difficulty sitting or standing in one position for long. (Tr. 688). Dr. Richardson indicated that Sulls had moderate limitations in sitting, standing, walking, lifting, bending, squatting, crawling, climbing, reaching above shoulders,

driving, and normal house work. (Tr. 689). She also determined that Sulls had significant limitations with repetitive leg movements. (Tr. 689). Thus, Sulls has argued that the ALJ's statement that "no treating source submitted a statement concerning any greater degree of limitation" than found by the State agency doctors was incorrect. (Tr. 64). Moreover, Sulls contends that Dr. Richardson's opinion supported a finding of disability under Social Security rules by suggesting a sedentary RFC.

However, the Commissioner has argued that Dr. Richardson was not Sulls's treating physician at the time she issued her opinion. Moreover, the Commissioner has argued that Dr. Richardson's statement did not indicate whether the functional limitations were expected to last 12 continuous months. Finally, the ALJ found that Sulls's description of his pain and his subjective symptoms were not entirely credible. Therefore, the Commissioner contends that since Dr. Richardson's statement was based on Sulls's unreliable descriptions of pain, her findings were unreliable as well. However, those were not reasons that appeared in the ALJ's opinion, and thus they cannot be used here. **SEC v. Chenery Corp.,** 318 U.S. 80, 87–88, 63 S. Ct. 454, 87 L. Ed. 626 (1943). The ALJ did not consider Dr. Richardson's opinion from August 27, 2013. Yet, the ALJ did consider and assign great weight to Dr. Richardson's January 14, 2014, statement that Sulls needed a cane.

A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(d)(2)**; *see* **Bates v. Colvin**, 736 F.3d 1093, 1099 (7th Cir. 2013); **Punzio v. Astrue**, 630 F.3d 704, 710 (7th Cir. 2011); **Schmidt v. Astrue**, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must "minimally articulate his reasons for

crediting or rejecting evidence of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)); *see* **20 C.F.R. § 404.1527(d)(2)** ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

Regardless if the ALJ determined that Dr. Richardson was not Sulls's treating physician, he must evaluate every medical opinion in the record. In determining the value of the opinion, the ALJ must consider factors such as whether the medical source has examined the claimant; whether the medical source has supported her opinion adequately; whether the opinion is consistent with the record as a whole; and whether the source has a particular specialization in a given area. **20 C.F.R. § 404.1527(c).** Moreover, the Commissioner cited *Diaz v. Chater,* 55 F.3d 300, 307-08 (7th Cir. 1995) to support her contention that the ALJ is not required to evaluate a portion of a doctor's opinion if it is based on the claimant's own unreliable statements. However, the Commissioner's contention is misguided because the claimant in that situation was challenging the weight given to the medical opinion.

The ALJ did not weigh Dr. Richardson's opinion, which prevents the court from assessing whether the ALJ's decision is supported by substantial evidence. *See* ***Roddy v. Astrue,*** 705 F.3d 631, 636 (7th Cir. 2013) (finding that the ALJ's failure to explicitly address a treating physician's opinion about a claimant's ability to work was a serious omission). Also, given Sulls's contention that the functional limitations found by Dr. Richardson supported a sedentary RFC, which would result in a finding of disability, the court cannot find that the ALJ would reach the same decision on remand. The Commissioner did not dispute Sulls's contention that a sedentary RFC would result in a finding of disability. The court acknowledges that the ALJ was not required to give Dr. Richardson's opinion controlling weight. *See* ***Ketelboeter v. Astrue,*** 550

F.3d 620, 625 (7th Cir. 2008). However, he was required to provide a sound explanation for his decision to reject it. *See* **20 C.F.R. § 404.1527(c)(2)**; *Jelinek v. Astrue,* 662 F.3d 805, 811 (7th Cir. 2011); *Campbell v. Astrue,* 627 F.3d 299, 306 (7th Cir. 2010); *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007). On remand, the ALJ should consider Dr. Richardson's opinion and assign it the appropriate weight.

Next, Sulls has argued that the ALJ's hypothetical question to the VE and the RFC failed to account for all his limitations in mental functioning. The ALJ's RFC assessment and the hypothetical posed to the VE must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)); *Indoranto v. Barnhart*, 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."). The question must include any deficiencies the claimant has in concentration, persistence, or pace. *Yurt*, 758 F.3d at 857; *O'Connor-Spinner*, 627 F.3d at 619 ("Among the limitations the VE must consider are deficiencies of concentration, persistence and pace."); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (indicating the hypothetical question "must account for documented limitations of 'concentration, persistence, or pace'") (collecting cases). The most effective way to ensure that the VE is fully apprised of the claimant's limitations is to include them directly in the hypothetical. *O'Connor-Spinner*, 627 F.3d at 619.

The ALJ found that Sulls had moderate difficulties in concentration, persistence, or pace. (Tr. 57). The ALJ posed the following hypothetical to the VE:

> First, I'd like you to consider a hypothetical individual with Mr. Sulls' past work and educational history, who's limited to a range of light work as defined in the regulations and DOT with the following additional limitations, occasional ramps and stairs, ladders, ropes

10

and scaffolds, balance, stoop, kneel, crouch, and crawl, occasional overhead reaching and lifting, frequent handling and fingering on the left, an option to change positions for ten minutes one time per hour, occasional exposure to extreme temperatures, noise, vibration and hazards, such as moving machinery and unprotected heights, and due to moderate limitations in concentration, persistence or pace, simple routine tasks and jobs that do not require more than occasional verbal communication. Would that individual be able to perform Mr. Sulls' past work?

(Tr. 108). Based on the hypothetical, the VE determined that Sulls could not perform his past relevant work. (Tr. 108). However, the VE indicated that there were jobs in the national economy that he could perform. (Tr. 109).

In the hypothetical posed to the VE, the ALJ accounted for Sulls's moderate limitations in concentration, persistence, or pace by limiting him to "simple routine tasks and jobs that do not require more than occasional verbal communication." Courts repeatedly have held terms like "simple, repetitive tasks" alone do not exclude from the VE's consideration those positions that present significant problems with concentration, persistence, or pace. *Stewart*, 561 F.3d at 684–85 (finding hypothetical limited to simple, routine tasks did not account for limitations of concentration, persistence, or pace); *see also* ***Varga v. Colvin***, 794 F.3d 809, 814 (7th Cir. 2015). Similarly, hypotheticals limiting the claimant to minimal social interaction with coworkers, supervisors, or the general public failed to account for difficulties in maintaining concentration, persistence, or pace. ***Stewart v. Astrue***, 561 F.3d 679, 685 (7th Cir. 2009); *see also* ***Varga***, 794 F.3d at 814.

In some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations. ***Varga***, 794 F.3d at 816 (citing ***Johansen v. Barnhart***, 314 F.3d 283, 286 (7th Cir. 2002)). The Commissioner contends that the ALJ's findings were directly supported by the findings of State

11

agency psychological consultant, Kenneth Neville, Ph.D. Dr. Neville, whose opinion the ALJ gave considerable weight, found that Sulls was moderately limited in his ability to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms; and to perform at a consistent pace without an unreasonable number of length of rest periods. (Tr. 157). Moreover, Dr. Neville found that Sulls was moderately limited in his ability to respond appropriately to changes in the work setting. (Tr. 158).

The specific areas that are assessed as limited predominantly deal with Sulls's ability to sustain attention and concentration for extended periods and to adjust to changes in the workplace. Dr. Neville in his MRFC-Additional Explanation indicated that Sulls retained the capacity for "unskilled tasks on a sustained basis in a competitive setting not requiring a rapid pace or intense concentration." (Tr. 158). Yet, the ALJ's decision indicated that the limitation to "routine tasks in an environment requiring no more than occasional verbal communication" adequately addressed the deficits identified by Dr. Neville. (Tr. 65). The Commissioner contends that the ALJ's limitation to "simple, routine tasks" was consistent with "unskilled" work.

The court finds that ALJ did not offer any analysis of how Sulls's moderate limitations in concentration, persistence, or pace were accounted for in his mental RFC. Moreover, the ALJ failed to account for Dr. Neville's opinion that Sulls was moderately limited in his ability to maintain attention and concentration for extended periods and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of length of rest periods. The ALJ did not

account for Dr. Neville's explanation in the MRFC that Sulls could perform unskilled tasks in a competitive setting "not requiring a rapid pace or intense concentration." "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620 (citing *Stewart*, 561 F.3d at 684-85; *Craft*, 539 F.3d at 677; *see also* SSR 85-15 (1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.")).

Thus, the ALJ by only limiting Sulls to "simple, routine tasks" has failed to account for Dr. Neville's findings that Sulls avoid rapid pace work or intense concentration. The ALJ should have discussed Sulls's ability to complete simple tasks for sustained periods, bearing in mind that the government has the burden of proof at this step in the analysis. *See Weatherbee v. Astrue,* 649 F.3d 565, 569 (7th Cir. 2011). Remand is required for the ALJ to consider these limitations and either include them in the RFC as well as the hypothetical or to explain why they were not included. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (holding that the ALJ must build a "logical bridge from the evidence to his conclusion").

Next, Sulls has argued that the ALJ's assessment of his physical RFC was inadequate. "The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or

13

restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence— including statements from medical sources about what the claimant can still do—as well as "other evidence, such as testimony by the claimant or his friends and family." *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).**

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what he must articulate in his written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, he cannot ignore evidence that undermines his ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not

14

support his conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

The ALJ indicated that after consideration of the entire record, he found that:

> [T]he claimant has the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps, stairs, ladders, ropes, or scaffolds. He is limited to occasional overhead reaching and lifting, but can do frequent handling and fingering with the left upper extremity. He requires the option to change positions for 10 minutes once per hour, provided he is not off task more than 5 percent of the time. He is limited to occasional exposure to extreme temperatures, noise, vibration, and workplace hazards such as moving machinery and unprotected heights. He requires a cane to walk.

(Tr. 58). Sulls has argued that the ALJ's RFC was arbitrary and that it did not rest on a factual basis, nor was it explained by the ALJ.

The ALJ concluded that Sulls was capable of occasional balancing and climbing, including ropes. (Tr. 58). However, Sulls contends that this was incompatible with his finding that he required a cane to walk. Moreover, Sulls has argued that Dr. Smejkal found that he was unable to stoop on examination. (Tr. 385). However, the RFC found that he was capable of occasional stooping. The ALJ's decision limited Sulls to frequent handling and fingering with the left upper extremity. Sulls has cited evidence in the record that his diabetic neuropathy was documented to cause numbness in both hands. (Tr. 385). Therefore, it was unclear why this limitation only was limited to one hand. Finally, Sulls contends that the ALJ failed to offer any explanation why he would need to change position for 10 minutes once per hour when his testimony was that he needed to change position every 10 minutes.

15

The ALJ has failed to create a logical bridge from the evidence to his conclusion. An ALJ always is obligated to address how he reached an RFC assessment by discussing some reasoning behind the RFC and the evidence that supports it. SSR 96-8p stresses that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." The ALJ generally discussed the medical evidence in the record. However, he has failed to explain how the medical evidence supported the RFC finding. On remand, the ALJ should support the RFC finding with substantial evidence by creating a logical bridge from the evidence to his conclusion.

Sulls has argued that the ALJ failed to apply SSR 83-12. Sulls contends that the RFC placed him between two Grid rules, namely light and sedentary work. SSR 83–12 provides:

> If the exertional level falls between two rules which direct opposite conclusions, i.e., "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:
>
> a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
>
> b. On the other hand, if the exertional capacity is significantly reduced in terms of the regularity definition, it could indicate little more than the occupational base for the lower rule and could justify finding of "Disabled."
>
> c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, VE assistance is advisable for these types of cases.

SSR 83–12. The Grid considers only exertional ability. If the claimant suffers from non-exertional limitations that might significantly reduce the range of work he can perform, the ALJ

16

may not rely on the Grid but must consult a VE to determine whether the claimant can perform a significant number of jobs. ***McQuestion v. Astrue,*** 629 F.Supp.2d 887, 899 (E.D. Wis. 2009).

The ALJ indicated that Sulls's RFC for less than the full range of light work precluded him from returning to his past relevant work. (Tr. 66). Sulls has argued that the RFC finding of a range of unskilled light work required the ALJ to determine if Sulls's limitations significantly reduced the range of light work he could perform or only slightly reduced the full range of light work. Sulls contends that at the sedentary level under the Grid rules he would be found disabled. Therefore, he contends that he was between two Grid rules so it was advisable for the ALJ to consult a VE to assist in assessing the vocational implications of Sulls limitations. Since the court has remanded this matter on the other issues, the ALJ should consider the severity of Sulls's limitations to determine if they significantly or only slightly reduce his light exertional base, and if necessary consult a VE to assist.

Finally, Sulls has argued that the ALJ failed to address evidence that he was illiterate. Sulls contends that the issue of illiteracy was determinative of the case because if the ALJ had found him to be illiterate, then given his RFC finding of light work someone of his age and work history would be found disabled. Sulls has indicated that the ALJ ignored evidence that was contrary to his decision.

The Commissioner has argued that the ALJ supported his decision by noting that Sulls had earned a GED, completed the Disability Report, and held a driver's license. However, the court finds that Sulls has pointed to contrary evidence in the record of his limited ability to read and write. For example, the claims representative noted that he had difficulty spelling his daughter's name, his wife testified that he could not read or read well. Moreover, the record contained evidence that Sulls indicated that he could not read. "An ALJ has the obligation to

17

consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." **Denton v. Astrue**, 596 F.3d 419, 425 (7th Cir. 2010).  Only then can the court be sure that the final determination reflects the ALJ's assessment of all of the evidence in the record.  Since this matter is being remanded on the above issues, the ALJ will have the opportunity to address this factual dispute on remand.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 24th day of September, 2018.

/s/ Andrew P. Rodovich
United States Magistrate Judge